WALKER *v.* GASKIN.

5-731                                                    282 S. W. 2d 606

Opinion delivered October 10, 1955.

*J. E. Still,* for appellant.

*Lookadoo, Gooch & Lookadoo,* for appellee.

ROBINSON, J. The issue here is whether the owner of a city lot has acquired a portion of an adjoining lot by adverse possession. Appellants, J. C. and Joyce Walker, filed this suit alleging that they are the owners of Lot 3 in Block 5, Gresham's No. 2 addition to the city of Arkadelphia; that the defendants, W. C. and Melva

Gaskin, are claiming the ownership of a strip of land of about six feet on the west side of Lot 3. The Gaskins filed an answer alleging that, regardless of where the true line may be, they had acquired the disputed strip by adverse possession. The court made a finding that the appellees, the Gaskins, had acquired the strip as alleged. The Walkers have appealed.

Appellee, W. C. Gaskin, bought Lot 4 from Edgar C. and Elinor Ruth Diggs on May 28, 1947. Appellants, the Walkers, bought the adjoining Lot 3 from J. B. and Doris Wright on April 1, 1950. The size of the lots is 25 feet east and west by 142 feet north and south. This suit was filed on June 9, 1954.

Appellants introduced as a witness John Oliver, county surveyor, and attempted to establish the true property lines, but the testimony of this witness falls short of serving that purpose. Although no plat was introduced as evidence, the surveyor claims that the strip of land in dispute is a part of Lot 3. However, he arrived at that conclusion merely by guessing at an accurate starting point.

Walker states that he did not know Gaskin was claiming the land in question until shortly before this suit was filed when Gaskin constructed a small levee. A portion of this levee extended on to Lot 3 in such a manner as to shed water thereon. Previously, Gaskin had constructed a sidewalk in front of his property but did not extend it across the part involved in this litigation. About the year 1949, Gaskin constructed a garage, a portion of which, according to the testimony of the surveyor, extends over onto Lot 3.

J. B. Wright, who sold Lot 3 to Walker, was called as a witness by appellants. He testified that there is a gum tree which is considered to be on the line between Lots 3 and 4, and when he bought Lot 3 the gum tree was pointed out as being on the line; that a fence extended from the center of the tree to the rear of the lot; that he never claimed anything past the gum tree; that between the gum tree and the front of the lot, and on a line

with the gum tree, there was an old crape myrtle bush that was considered to be on the property line. Wright said that he planted two small trees on that same line and that there is only 45 feet from the gum tree to the front of the lot, hence the fence from the gum tree to the rear of the lot extended over the greater portion of the property. Wright also testified that he bought to the gum tree and sold to the gum tree; that at all times Gaskin had possession and control of the property west of the gum tree; that Gaskin has lived there since 1947 and built the garage in 1949 and the driveway extending from the garage to the street. Wright further testified:

"Q. Who mowed the lawn on that land up to the street from the gum tree?

"A. We did; split it.

"Q. When you mowed your lawn you mowed your lawn up to the gum tree and on straight to the street?

"A. Yes, sir, that is right.

"Q. Then from the gum tree over, he mowed it? He kept that land mowed from that point of the gum tree where the old fence ran back, and on straight out to the street? He kept that land mowed continuously? You never did do that?

"A. No, sir."

Wright also said that he and Gaskin had talked over the subject of the property line and had agreed that the line was the gum tree, and when he sold the property to Walker he explained that the gum tree was on the line. Mrs. Wright corroborated the testimony of her husband. Edgar Diggs, who sold Lot 4 to Gaskin, testified that when he bought the property the gum tree was pointed out as the line, and that when he sold the property he pointed out the gum tree as the line.

The Chancellor made a finding that the Gaskins had acquired by adverse possession any portion of Lot 3 that may lie west of the center of the gum tree, and we cannot say that the Chancellor's finding is contrary to the preponderance of the evidence. The decree is therefore affirmed.